### UNITED STATES v. SHALLUS & Co. (No. 1956).[1]

1. TAX—DUTY.

When provision is made for a tax on an import, it unquestionably provides for a duty. The definition of a duty is a tax on imports; excise or customs dues. When a tax is imposed upon an importation while it is still in customs custody, it is to be inferred that it is intended as duty on imports.

---

[1] T. D. 37999 (36 Treas. Dec., 391).

2. SECTION 300, WAR REVENUE ACT OF 1917 (CHAP. 63, L., 1917)—INTERNAL REVE-
   NUE—DUTY.

The provision of section 300, war revenue act of 1917. (chap. 63, L., 1917), levy-
ing an additional tax upon imported distilled liquor and directing that it shall be
collected under existing law, describes an import tax and *not an internal-revenue*
tax.

3. SECTION 300, WAR REVENUE ACT OF 1917 (CHAP. 63, L., 1917)—PARAGRAPH N OF
   SECTION 3, TARIFF ACT OF 1913—ESTOPPEL—JURISDICTION OF BOARD OF
   UNITED STATES GENERAL APPRAISERS.

The Secretary of the Treasury and the Commissioner of Internal Revenue, having
treated the additional tax upon imported distilled liquors provided for by section
300, war revenue act of 1917 (chap. 63, L., 1917) as duties, and it having been col-
lected as duties, the importers can not be deprived of their right of appeal under
paragraph N, section 3, tariff act of 1913. The action of the Board of United
States General Appraisers in dismissing their protest sua sponte for want of juris-
diction in themselves is reversible error.

United States Court of Customs Appeals, April 18, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42718.

[Reversed and remanded.]

*Bert Hanson,* Assistant Attorney General, for the United States.
*John J. Mulvaney* amicus curiæ.

[Oral argument Mar. 27, 1919, by Mr. Hanson and Mr. Mulvaney.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

On or about July 7, 1917, appellees imported, at the port of Balti-
more, certain whisky, entered for warehouse. The entry was, on the
16th day of July, 1917, liquidated by the collector of customs at that
port and duty assessed upon the whisky at $2.60 per proof gallon
under paragraph 237 of the tariff act of 1913.

The war revenue act of 1917 took effect October 4, 1917. The
whisky was still in bond when that act took effect. On December 7,
1917, the collector of customs at said port reliquidated the entry and
assessed an *additional* revenue of $2.10 per gallon under section 300
of the act of 1917. On December 14, 1917, appellees protested to the
collector of customs, alleging as a ground of protest as follows:

We do hereby protest against your action and collection of duty at the rate of $2.10
per gallon on 383 gallons of whisky imported by us per steamship *Argalia* from Glasgow,
Scotland, July 7, 1917. * * *

You have assessed duty at the rate of $2.10 per gallon for revenue purposes under
the act of October 4, 1917, on 383 gallons, amounting to $804.30, which we claim was
erroneous, and that said ascertainment and collection of duty should have been upon
the actual quantity of whisky found in the aforesaid nine casks at the time of the
actual withdrawal from the bonded warehouse, after an official regauging had been
ascertained. * * *

The protest was overruled by the collector and on appeal the Board
of General Appraisers, of its own motion, the issue not having been

tendered by the parties, held the assessment an exaction of an internal revenue tax and that the board was without jurisdiction to hear such appeals, notwithstanding the decision as to the inurement of the claimed revenue was made by a collector of customs. Appeal therefrom was taken by the Government. The importers do not appeal in this court.

The sole question presented to the court is the jurisdiction of the board to hear and determine the case.

Paragraph N of section 3 provides—

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon.

A remedy is provided by the Revised Statutes (sec. 3226 et seq., as amended) for the institution of suits to recover for internal-revenue taxes wrongfully assessed or excessive in amount.

The duty levied in this case was imposed under the first part of section 300 of the war revenue act of 1917, which reads as follows:

That on and after the passage of this act there shall be levied and collected on all distilled spirits in bond at that time or that have been or that may be then or thereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section three hundred and three, in addition to the tax now imposed by law, a tax of $1.10 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $2.10) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law.

That in addition to the tax under existing law there shall be levied and collected upon all perfumes hereafter imported into the United States containing distilled spirits a tax of $1.10 per wine gallon, and a proportionate tax at a like rate on all fractional parts of such wine gallon. Such tax shall be collected by the collector of customs and deposited as internal-revenue collections, under such rules and regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe.

By T. D. 37391 the Secretary of the Treasury and the Commissioner of Internal Revenue directed:

Distilled spirits produced prior to October 4, 1917, remaining in bonded warehouse on or after October 4, 1917, may be withdrawn for consumption and be released by

the collector of customs upon the payment of the duty provided in the act of October 3, 1913, and the additional tax imposed by section 300 of the act of October 3, 1917. * * *

.The additional tax collected on distilled spirits will be deposited and accounted for as duties.

There has been no attempt, so far as this record discloses, to make a collection of any sum as an internal-revenue tax. The tax was levied on an import while in customs custody and was provided for as a tax on distilled spirits when imported into the United States or in bond.

That this is a tax on imports can not be questioned. Brown *v.* Maryland (12 Wheat., 419); May *v.* New Orleans (178 U. S., 496, 507).

Stress seems to have been laid by the board upon the fact that the word "tax" was employed in place of the word "duties," in section 300, but the word "tax" is often used interchangeably with the word "duties," and when provision for a tax on an import is made it unquestionably provides for a duty. The definition of a duty is "a tax on imposts; excise or customs dues." So it may be well said, therefore, that when the tax is imposed upon an importation, while it is still in customs custody, the purpose is to be inferred that it is intended as duties on imports.

In the present case the tax is levied on an imported article while still in customs custody, and is provided for as a tax on distilled spirits when imported into the United States or in bond. It is true that coupled with this provision is a provision for a like tax on spirits produced in this country, but if the status of the property as an import is to determine the question of whether the tax is an import tax or an internal-revenue tax, then clearly it can make no difference that there is coupled with the same provision of law for a tax on imports a provision for a tax on domestic goods.

The provision is that the tax shall be collected under existing laws. This points out no particular law, but is to be construed as providing for collection under the appropriate law. The duties are no more collectible under the internal-revenue law than the internal-revenue tax is under the customs procedure.

While there may be room for doubt as to the congressional intent as expressed by this statute, the fact is that the Secretary of the Treasury and the Commissioner of Internal Revenue have construed the law as above indicated, and have directed that this tax should be treated as duties, and so collected. In other words, the authorities having the duty to perform in connection with the collection of this sum of money, have proceeded to take steps to collect this amount, including an excessive sum, as is charged, *as duties*, and having therefore created the *distinct condition* entitling the importer to the remedy provided in subdivision N, should not be heard to say that the remedy is to be denied or the importer left without remedy. It

would be difficult indeed for the importer to proceed under the law providing the remedy for an improper exaction under the internal-revenue law. No internal revenue is connected with this transaction. The most that can be said is that the property may be subject to an internal-revenue tax, but none such has been levied. None is in process of being levied. If this money is collected, it is not collected as an internal-revenue tax but distinctly as a duty on an import.

To repeat, the importers having made it appear by their protest that the action of the collector of customs has created the condition contemplated by subdivision N, that is to say, has levied an improper amount of duties, it follows that under paragraph N the importers are entitled to invoke the jurisdiction of the Board of General Appraisers

The board fell into an error in its statement of facts. The error arose from not quoting all the collector said as to the character of this tax. It is said in the opinion:

While the protest calls the tax a "duty," the collector did not recognize nor collect it as such, but in his statement calls it "a revenue tax" and refers to the statute under which he collected it.

It is true the collector states that objection was made "against my assessment of internal-revenue tax of $2.10 per gallon on the quantity returned by customs gauger at the time of entry," but he further states: "Quantity returned by customs gauger, 383 gallons; and *assessed with tax as duty* under section 300 of Title III, act of October 3, 1917, in accordance with department's ruling of November 1, 1917."

I am authorized to say that Judge De Vries concurs in this conclusion, but prefers to withhold his decision upon the question as to whether the tax involved should have been treated as duties, but agrees that the authorities, having created the condition provided in subdivision N, the importers are entitled to the remedy sought.

The decision of the board is *reversed*, and case remanded for trial.