POLLAK IMPORT-EXPORT CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 89-02-00088

(Decided December 20, 1990)

*Fitch King & Caffentzis (James Caffentzis)* for plaintiff.
*Stuart M. Gerson*, Assistant Attorney General, *Joseph I. Liebman*, Attorney in Charge, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *(Susan Burnett Mansfield)* for defendant.

Plaintiff Pollak Import-Export Corporation (Pollak) imported wool garments under item 384.63 TSUS on August 5, 1987, along with a visa under category 446 (sweaters). These garments required a visa: the visa accompanying the merchandise did not match the number on the invoice for the merchandise.

The United States Customs Service (Customs) issued a notice of redelivery for all of the merchandise on August 19, 1987, which stated that "subject merchandise is classified as coats not as sweaters. A visa for category 435 is required." Pollak protested against redelivery of the entire batch of garments on November 16, 1987, but redelivered 602 garments to Customs at the same time.

Customs seized the 602 garments on December 9, 1987, pursuant to 19 U.S.C. sec. 1595a(c) and Pollak petitioned to rescind the seizure and to reexport the 602 garments on January 7, 1988. Customs remitted forfeiture on February 12, 1988, while Pollak assented to a Hold Harmless Agreement and agreed to reexport the merchandise and pay a $2000.00 fine. Pollak reexported the 602 garments on May 6, 1988.

The Hold Harmless and Release Agreement (Agreement) reads in relative part" * * * Pollak Import-Export, hereby release[s] and forever discharge[s] the United States * * * from any and all actions, cause of actions, suits, proceedings, debts [etc.] whatsoever * * * in connection with the detention, seizure, and/or release by the United States Customs Service [of the 602 garments]. * * *"

On May 12, 1988, Customs demanded $110,340.00 in liquidated damages for Pollak's failure to redeliver the balance of the merchandise. Pollak immediately petitioned for relief from the liquidated damages, before Customs had decided Pollak's original protest against redelivery. Pollak agreed to pay when Customs mitigated the liquidated damages for failure to redeliver from $110,340.00 to $860.00 on March 9, 1989.

On August 25, 1988, Customs denied Pollak's original protest against redelivery. Customs liquidated the original entry in its entirety with no change in the original duty rate under 19 U.S.C. sec. 1500 on July 28, 1989. Customs later reliquidated the entry to take into account the 602 garments that Pollak reexported on July 6, 1990.

On February 28, 1990, Pollak filed its complaint, seeking repayment of both the sums of $2,000.00 and $860.00 and removal of both penalties from the record.

Defendant moves to dismiss plaintiff's complaint for $2,860.00 in damages on the grounds that the controversy was mooted by plaintiff's settlement of two controversies over liquidation and/or redelivery of goods.

### DISCUSSION

The Court has no jurisdiction over the exported garments because the Agreement effectively disposes of all claims Pollak may have had, and thus presents to the Court no claims for which relief can be accorded. Also, under the doctrine expounded in *Wear Me Apparel Co. v. United States*, 10 CIT 332, 636 F. Supp. 481 (1986), the merchandise was no longer "excluded" merchandise once it was exported, and there remains no protestable event.

Pollak signed the Hold Harmless and Release Agreement as a part of the settlement of the protest over seizure and reexport of the 602 garments. Pollak contends that the Agreement has no bearing on the administrative protest it made concerning the demand for redelivery of the original batch of goods. However, the Agreement lists the entry number of the entire batch, and it releases the U.S. for any action concerning "the above listed property." Although the Agreement lists the entry number of the entire batch of 241 dozen garments, it describes the

"24 cartons of redelivered ladies wool knitted jackets." It is unclear whether the original "241 dozen" entry corresponds to the 24 cartons described in the Agreement.

Pollak redelivered only the 602 garments. Therefore, the Hold Harmless Agreement pertains only to the seizure of the redelivered goods and not to the protest of the demand for redelivery of the original entire batch of 241 dozen garments.

Customs' actions regarding the original protest and the Hold Harmless Agreement accord with this interpretation. Customs liquidated the original batch only after the Hold Harmless Agreement was signed and Pollak's fine of $2000.00 paid. The original protest was outstanding, and was decided after the Agreement was signed.

In light of the Hold Harmless Agreement, Pollak's claim is moot as to the 602 garments.

With respect to the imported merchandise which was not redelivered, Customs' mitigation of damages from $110,340.00 to $860.00 while perhaps not technically an accord and satisfaction is nevertheless a complete administrative resolution of the controversy leaving no protestable event which would vest jurisdiction in this Court. *See ITT Semi-Conductors v. United States*, 6 CIT 231, 236-37, 576 F. Supp. 641 (1983) (Customs' threat to refer case to prosecuting authorities for non-payment was not coercion but rather threat to pursue legal remedy). The claim concerning the protest made against redelivery of the original batch of garments was mooted by Pollak's payment of the $860.00 in liquidated damages.

Pollak's demand that the record be expunged is a new claim not pursued in the administrative proceedings and cannot be raised at this level.

Under all of the circumstances the Court finds that it has no jurisdiction over Pollak's claim and the government's motion for dismissal must be, and is hereby granted.